IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

**LARRY R. MIXON**                                                                              **PLAINTIFF**

**V.**                                            **CIVIL ACTION NO. 2:12-CV-234-KS-MTP**

**THE GOLDEN RULE INSURANCE
COMPANY**                                                                                       **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

For the reasons stated below, the Court **denies** Defendant's Motion for Oral Argument and Hearing [45], **grants in part and denies in part** Defendant's Motion for Summary Judgment [25, 31], **denies** Defendant's Motion to Strike [36], **grants** Plaintiff's Motion to Appoint Expert Out of Time [41], and **grants in part and denies in part** the parties' joint Motion to Continue [47].

### I. BACKGROUND

This is an insurance coverage dispute over the application of a short-term major medical policy's preexisting condition exclusion. During the first week of December 2011, Plaintiff experienced lower back pain while digging a hole. At that time, the pain was severe enough that it caused him to fall to his knees. He continued working as a deliveryman for the next week or two, still experiencing pain.

On December 13, 2011, he visited Peavy Chiropractic Clinic. On some days chiropractic treatment relieved Plaintiff's pain, and on others it did not. Plaintiff continued to receive chiropractic treatment for about a month. During the same period of time – on December 26, 2011 – he visited a general practitioner, Dr. Amanda Rice.

Dr. Rice recorded Plaintiff's description[1] of his symptoms:

> This is a recurrent problem. The current episode started more than 1 month ago. The problem occurs intermittently. The pain is present in the lumbar spine. The quality of the pain is described as aching. The pain does not radiate. The pain is mild. The pain is the same all the time. The symptoms are aggravated by bending and position. Stiffness is present all day. Pertinent negatives include no abdominal pain, bladder incontinence, bowel incontinence, numbness, paresis, tingling or weakness. He has tried chiropractic manipulation, heat and analgesics for the symptoms. The treatment provided mild relief.

Dr. Rice wrote Plaintiff prescriptions for a painkiller and muscle relaxer, and she referred him to physical therapy.

After visiting Dr. Rice, Plaintiff discovered that his health insurance had terminated. Plaintiff's wife anticipated that he would be able to receive insurance coverage through her group policy in February 2012. So, on December 30, 2011, she submitted an application to Defendant for one month of short-term coverage beginning on January 1, 2012. Defendant issued a Short Term Major Medical Expense policy[2] to Plaintiff with an effective time period of January 1, 2012, through February 1, 2012.

Plaintiff continued to experience lower back pain, and his wife insisted that he seek further treatment. On January 11, 2012, Plaintiff saw Dr. Kerry Bernardo. After examining Plaintiff, Dr. Bernardo noted: "[T]his is not a nerve pinch type problem. It appears to be a primary muscle problem. . . . [W]e do need a set of plain films of the

---

[1] A copy of Dr. Rice's records pertaining to Plaintiff are attached as Exhibit 3 [31-3] to Defendant's Motion for Summary Judgment.

[2] A copy of the policy is included in Exhibit 6 [31-6] to Defendant's Motion for Summary Judgment.

2

lumbar spine to be absolutely certain that there is not any evidence of instability in the lower back. . . . [I]f the films are satisfactory in appearance my recommendation would be a brief course of physical therapy . . . ."[3] Accordingly, he ordered x-rays and wrote Plaintiff a prescription for a muscle relaxer.

Plaintiff's x-rays showed a compression fracture and other abnormalities, prompting Dr. Bernardo to call Plaintiff back in for an MRI on January 12, 2012. The MRI showed a "significant signal abnormality throughout the lumbar spine . . . ," suggesting "either metastasis, myeloma, or a myeloproliferative disorder." Plaintiff subsequently saw Dr. Silvarama Kotikalamudi, who provided a diagnosis of multiple myeloma in late January 2012. Plaintiff later underwent chemotherapy and a stem cell transplant.[4] His myeloma is currently in remission.

Defendant received claims from Plaintiff's medical providers for services provided between January 1, 2012, and February 1, 2012. After reviewing Plaintiff's medical records, Defendant denied the claims[5] on April 26, 2012. Defendant represented that it had Plaintiff's records "reviewed by a qualified doctor," and that he "was of the opinion that [Plaintiff] received medical advice, diagnosis, care or treatment for what was ultimately diagnosed as multiple myeloma within the 6

---

[3]A copy of Dr. Bernardo's records pertaining to Plaintiff are attached as Exhibit 4 [31-4] to Defendant's Motion for Summary Judgment.

[4]Plaintiff's records from the University of Mississippi Medical Center are attached as Exhibit 5 [31-5] to Defendant's Motion for Summary Judgment.

[5]The denial letter can be found at pp. 103-105 of Exhibit 6 [31-6] to Defendant's Motion for Summary Judgment.

months immediately preceding January 1, 2012, the effective date of [the] plan." Citing the policy's exclusion of preexisting conditions, Defendant denied the claims.

Plaintiff filed a Complaint [1-2] in the Circuit Court of Forrest County, Mississippi, asserting claims of breach of contract, negligence, gross negligence, bad faith, detrimental reliance, negligent misrepresentation, intentional and negligent infliction of emotional distress, and breach of the duty of good faith and fair dealing. Defendant removed the case [1] and eventually filed a Motion for Summary Judgment [25, 31], which is now ripe for review.

Defendant requested [45] a hearing and oral argument on the motion. Having reviewed the parties' briefs, the Court finds that a hearing and oral argument are not necessary.

## II. MOTION FOR SUMMARY JUDGMENT [25, 31]

Rule 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010). "Where the burden of production at trial ultimately rests on the nonmovant, the movant must merely demonstrate an absence of evidentiary support in the record for the nonmovant's case." *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010) (punctuation omitted). The nonmovant "must come forward with specific facts showing that there is a genuine issue for trial." *Id.* (punctuation omitted). "An issue is material if its resolution could affect the outcome of the action." *Sierra Club, Inc.*, 627

F.3d at 138. "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Cuadra*, 626 F.3d at 812.

The Court is not permitted to make credibility determinations or weigh the evidence. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009). When deciding whether a genuine fact issue exists, "the court must view the facts and the inference to be drawn therefrom in the light most favorable to the nonmoving party." *Sierra Club, Inc.*, 627 F.3d at 138. However, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002).

### A.   *Breach of Contract*

Plaintiff claims that Defendant breached the policy by failing to pay the claims. Defendant argues that the claims are excluded by the policy's preexisting condition clause. The policy provides: "Preexisting conditions will not be covered under the policy." Exhibit 6 to Defendant's Motion for Summary Judgment [31-6], at p. 44. It defines "preexisting condition" as:

> . . . an *injury* or *illness* for which medical advice, diagnosis, care or treatment was recommended to or received by a *covered person* within the 6 months immediately preceding the applicable *effective date* the *covered person* became insured under the *policy*, or which, in the opinion of a qualified *doctor*, (1) probably began prior to the applicable *effective date* the *covered person* became insured under the *policy*; and (2) manifested symptoms which would cause an ordinarily prudent person to seek diagnosis or treatment within the 6 months immediately preceding the applicable *effective date* the *covered person* became insured under the *policy*.

*Id.* at p. 54. The policy defines an "illness" as:

> . . . a sickness, disease, disorder or abnormal condition of a *covered person*. . . . All *illnesses* that exist at the same time and which are due to the same or related causes are deemed to be one *illness*. Further, if an *illness* is due to causes which are the same as, or related to, the causes of a prior *illness*, the *illness* will be deemed a continuation or recurrence of the prior *illness* and not a separate *illness*.

*Id.* at p. 27.

Defendant offers two arguments related to these provisions. First, citing the policy's definition of an "illness," Defendant argues that Plaintiff's myeloma is the same "illness" as his preexisting lower back pain insofar as both "exist[ed] at the same time" and were "due to the same or related causes . . . ." Second, Defendant argues that Plaintiff's myeloma was a preexisting condition because, in the opinion of a qualified doctor, it (1) probably began prior to the policy's effective date, and (2) manifested symptoms which would cause an ordinarily prudent person to seek diagnosis or treatment within the six months prior to the policy's effective date.

The Court's ultimate goal in applying an insurance policy is to "render a fair reading and interpretation of the policy by examining its express language and applying the ordinary and popular meaning to any undefined terms." *Corban v. United Servs. Auto. Ass'n*, 20 So. 3d 601, 609 (Miss. 2009). "In Mississippi, insurance policies are contracts, and as such, they are to be enforced according to their provisions." *Id.*

> First, where an insurance policy is plain and unambiguous, a court must construe that instrument, like other contracts, exactly as written. Second, it reads the policy as a whole, thereby giving effect to all provisions. Third, it must read an insurance policy more strongly against the party drafting the policy and most favorably to the policy holder. Fourth, where it deems the terms of an insurance policy ambiguous or doubtful, it must

> interpret them most favorably to the insured and against the insurer. Fifth, when an insurance policy is subject to two equally reasonable interpretations, a court must adopt the one giving the greater indemnity to the insured. Sixth, where it discerns no practical difficulty in making the language of an insurance policy free from doubt, it must read any doubtful provision against the insurer. Seventh, it must interpret terms of insurance policies, particularly exclusion clauses, favorably to the insured wherever reasonably possible. Finally, although ambiguities of an insurance policy are construed against the insurer, a court must refrain from altering or changing a policy where terms are unambiguous, despite resulting hardship on the insured.

*Nationwide Mut. Ins. Co. v. Lake Caroline, Inc.*, 515 F.3d 414, 419 (5th Cir. 2008); *see also Corban*, 20 So. 3d at 609; *Guidant Mut. Ins. Co. v. Indem. Ins. Co. of N. Am.*, 13 So. 3d 1270, 1281 (Miss. 2009); *United States Fid. & Guar. Co. v. Martin*, 998 So. 2d 956, 963 (Miss. 2008).

"Policies containing limitations or exclusions for preexisting diseases or conditions are valid and enforceable in Mississippi. Such clauses have been construed to require distinct symptoms from which the underlying conditions can be reasonably diagnosed." *Leddy v. Miss. State Med. Assoc.*, 7 F. Supp. 2d 819, 821 (S.D. Miss. 1998). In other words, "[n]ot only must the physical condition or disease exist prior to the effective date of coverage under such an exclusion," but there must be "a manifestation of it to the insured prior to the date of becoming insured. The ailment or disease will ordinarily be deemed to exist when a distinct symptom, ailment or condition manifests from which a doctor can with reasonable accuracy diagnose the disease . . . ." *State v. Carper*, 545 So. 2d 1, 3 (Miss. 1989); *see also* Jeffrey Jackson, *Mississippi Insurance*

*Law & Practice* § 17:10 (2013).[6]

Defendant's first argument is unavailing insofar as the policy's definition of an "illness" – as applied by Defendant here – effectively nullifies Mississippi law concerning the enforcement of preexisting condition clauses. Preexisting condition clauses are not enforceable under Mississippi law unless the physical condition or disease manifested itself prior to the effective date of coverage such that a doctor could with reasonable accuracy diagnose the disease. *Ross v. W. Fidelity Ins. Co.*, 872 F.2d 665, 669 (5th Cir. 1989); *Leddy*, 7 F. Supp. 2d at 821-22; *Carper*, 545 So. 2d at 3; *Blue Cross & Blue Shield of Miss., Inc. v. Mosley*, 317 So. 2d 58, 61 (Miss. 1975); *Provident Life & Acc. Ins. Co. v. Jemison*, 120 So. 180, 182 (Miss. 1929). Therefore, to the extent the policy's definition of an "illness" seeks to circumvent this requirement, it can not be enforced under Mississippi law.

With respect to Defendant's second argument, the Court notes that Plaintiff experienced a single symptom prior to the policy's effective period: lower back pain. In a similar case, this Court held that prior back pain was not sufficient to demonstrate that pseudoarthrosis was a preexisting condition. *Rosamond v. Great Am. Ins. Co.*, No. 3:10-CV-263-TSL-MTP, 2011 WL 4433582, at *2 (S.D. Miss. Aug. 4, 2011). Here, Plaintiff had lower back pain for a month prior to the policy's effective date. He received chiropractic treatment and sought the advice of his doctor, who prescribed a

---

[6]Mississippi's legislature codified these common-law principles, limiting exclusions and definitions of preexisting conditions in health insurance policies. *See* MISS. CODE ANN. § 83-9-49. The Court's analysis will focus solely on the case law, as the parties failed to address the statute in briefing.

muscle relaxer and referred him to physical therapy. Dr. Dubois, Defendant's expert, testified that Plaintiff's lower back pain "would cause an ordinary prudent person to seek diagnosis or treatment" – not that a doctor could with reasonable accuracy diagnose multiple myeloma from lower back pain, as required by Mississippi law.

Construing all of these facts in the light most favorable to Defendant, the Court finds that there exists a genuine dispute of material fact as to whether a qualified doctor could with reasonable accuracy have diagnosed Plaintiff's back pain as stemming from multiple myeloma. Accordingly, the Court must deny Defendant's Motion for Summary Judgment [25, 31] with respect to Plaintiff's claim for breach of contract.

### B.   *Other Claims*

Defendant argues that Plaintiff's negligence, gross negligence, misrepresentation, and detrimental reliance claims should be dismissed as mere restatements of Plaintiff's breach of contract claim. The Court agrees. According to the Complaint, all of these claims – negligence, gross negligence, misrepresentation, detrimental reliance – arise from Defendant's failure to comply with the terms of the policy. They are, therefore, duplicative and should be dismissed. *Spansel v. State Farm Fire & Cas. Co.*, 683 F. Supp. 2d 444, 453 (S.D. Miss. 2010); *Oxford Mall Co. v. K & B Miss. Corp.*, 737 F. Supp. 962, 967 (N.D. Miss. 1990).

Defendant also argues that Plaintiff's claims for bad faith and breach of the duty of good faith and fair dealing fail because there is no evidence of conduct to support the claim. The Court agrees. "Good faith is the faithfulness of an agreed purpose between

two parties, a purpose which is consistent with justified expectations of the other party. The breach of good faith is bad faith characterized by some conduct which violates standards of decency, fairness or reasonableness." *Cenac v. Murray*, 609 So. 2d 1257, 1272 (Miss. 1992). Bad faith is "more than bad judgment or negligence; rather, bad faith implies some conscious wrongdoing because of dishonest purpose or moral obliquity." *Limbert v. Miss. Univ. for Women Alumnae Assoc., Inc.*, 998 So. 2d 993, 998 (Miss. 2008); *see also Johnston v. Palmer*, 963 So. 2d 586, 594 (Miss. Ct. App. 2007). Plaintiff has not offered any evidence of conduct which meets the above standards. Indeed, he testified [31-6] that the only problem he had with Defendant's handling of the claim was their denial of the claim under the preexisting condition clause. Therefore, summary judgment is appropriate as to his claims for bad faith and breach of the duty of good faith and fair dealing.

## C.     *Damages*

Finally, Defendant argues that summary judgment is appropriate as to Plaintiff's claims for emotional damages, punitive damages, and attorney's fees. By statute, punitive damages are unavailable "if the claimant does not prove by clear and convincing evidence that the defendant against whom punitive damages are sought acted with actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, or committed actual fraud." MISS. CODE ANN. § 11-1-65(1)(a); *see also Jenkins v. Ohio Cas. Ins. Co.*, 794 So. 2d 228, 232-33 (Miss. 2001) (requiring evidence of a willful or malicious wrong, or gross and reckless disregard for the insured's rights). Plaintiff has offered no evidence of such conduct, and punitive

damages are not available here.

As for emotional damages, "Plaintiffs may recover such damages without proof of a physical manifestation," and "expert testimony showing actual harm to prove mental injury is not always required." *Univ. of S. Miss. v. Williams*, 891 So. 2d 160, 172 (Miss. 2004). But "the plaintiff must show (1) that mental anguish was a foreseeable consequence of the particular breach of contract, and (2) that he or she actually suffered mental anguish. Such generalizations as 'it made me feel bad,' or 'it upset me' are not sufficient. A plaintiff must show specific suffering during a specific time frame." *Id.*; *see also Landrum v. Conseco Life Ins. Co.*, No. 1:12-CV-5-HSO-RHW, 2014 U.S. Dist. LEXIS 188, at *8 (S.D. Miss. Jan. 2, 2014).

Plaintiff testified [31-6] that "[j]ust having to deal with all of this" caused him to suffer anxiety. He claims to have suffered "[p]lenty of sleepless nights trying to figure out how you're going to pay the next bill," but he acknowledged that many things beyond Defendant's actions contributed to his sleeplessness. He stated: "When you're out of work for a year, and you're struggling, it's tough." This is a borderline case. Plaintiff could have provided more details, but his testimony *barely* satisfies the requirements of *Williams*, as provided above. *Williams*, 891 So. 2d at 172. Accordingly, summary judgment as to Plaintiff's claim for emotional damages would be inappropriate.

As for attorney's fees, "[i]nsurers who are not liable for punitive damages may nonetheless be liable for consequential . . . damages (e.g., reasonable attorney fees, court costs, and other economic losses) where their decision to deny the insured's claim

11

is without a reasonably arguable basis but does not otherwise rise to the level of an independent tort." *Broussard v. State Farm Fire & Cas. Co.*, 523 F.3d 618, 628 (5th Cir. 2008) (citing *Andrew Jackson Life Ins. Co. v. Williams*, 566 So. 2d 1172, 1186 n. 13 (Miss. 1990)). Defendant has not presented any argument on this point. Therefore, the Court will not address it here.

### *D. Conclusion*

For all of the reasons stated above, the Court **grants in part and denies in part** Defendant's Motion for Summary Judgment [25, 31]. The Court denies the motion as to Plaintiff's breach of contract claim and demands for contractual damages, emotional damages, and attorney's fees, but the Court grants the motion in all other respects.

### III. TESTIMONY OF DR. KERRY BERNARDO

It is undisputed that Plaintiff failed to designate Dr. Kerry Bernardo as an expert witness. Defendant moved [36] to strike Dr. Bernardo's testimony [34-5], while Plaintiff sought leave to designate him out of time [41]. Rule 26 requires the disclosure of the identity of any potential expert witnesses to be called at trial, and that the potential expert witness provide a written report. FED. R. CIV. P. 26(a)(2)(A), (B). "If a party fails to designate an expert witness, Federal Rule of Civil Procedure 37 prohibits the party from using that witness to supply evidence at a motion, hearing, or trial unless the failure was substantially justified or harmless." *Brumfield v. Hollins*, 551 F.3d 322, 330 (5th Cir. 2008). When deciding whether to exclude an expert not properly designated, the Court considers four factors: "(1) the explanation for the failure to

12

identify the witness; (2) the importance of the testimony; (3) potential prejudice in allowing the testimony; and (4) the availability of a continuance to cure such prejudice." *Id.* (citing *Geiserman v. MacDonald*, 893 F.2d 787, 791 (5th Cir. 1990).

The Court need not evaluate the sufficiency of Plaintiff's explanation, as the remaining three factors counsel allowance of the out-of-time designation. The testimony at issue is very important. Dr. Bernardo treated Plaintiff in early January 2011. He knows the symptoms that Plaintiff presented at that time, and his opinion as to whether a doctor could with reasonable accuracy diagnose multiple myeloma from Plaintiff's preexisting lower back pain is highly relevant to this case. As it stands, though, allowing Dr. Bernardo to testify would prejudice Defendant insofar as Plaintiff failed to designated him, disclose his testimony, or comply with any of the requirements for expert testimony. This prejudice may be cured by a minor adjustment to the case's current schedule.

First, the pretrial conference scheduled for February 13, 2014, shall be moved to February 27, 2014, at 9:30 a.m. All other aspects of the notice entered on January 14, 2014, shall remain in effect.

As for Dr. Bernardo's testimony, treating physicians must be designated in accordance with Rule 26(a)(2)(A). *Hamburger v. State Farm Mut. Auto. Ins. Co.*, 361 F.3d 875, 882 (5th Cir. 2004). The designation "must state (I) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify." FED. R. CIV. P. 26(a)(2)(C). If Plaintiff wishes to designate Dr.

Bernardo as an expert witness, he may do so on or before January 31, 2014. Defendant may then depose Dr. Bernardo outside the discovery period at any point before the pretrial conference on February 27, 2014. If Plaintiff has not already produced all relevant medical records to Defendant, Plaintiff shall do so at least one week prior to the deposition.

The Court will not grant further continuances. If Plaintiff fails to designate Dr. Bernardo by January 31, 2014, fails to produce Dr. Bernardo for deposition, or otherwise fails to comply with this order or Rule 26, the Court will exclude Dr. Bernardo's expert testimony.[7]

## IV. CONCLUSION

For all of the reasons stated above:

- The Court **denies** Defendant's Motion for Oral Argument and Hearing [45];

- **denies** Defendant's Motion for Summary Judgment [25, 31] as to Plaintiff's breach of contract claim and demands for contractual damages, emotional damages, and attorney's fees, but **grants** it in all other respects;

- **denies** Defendant's Motion to Strike [36];

- **grants** Plaintiff's Motion to Appoint Expert Out of Time [41]; and

- **grants in part and denies in part** the parties' joint Motion to Continue [47].

The Court moves the pretrial conference to 9:30 a.m. on February 27, 2014.

---

[7]Dr. Bernardo could still testify as a fact witness, however. *See Gerald v. Univ. of S. Miss.*, 2013 U.S. Dist. LEXIS 146728, at *19 n. 7 (S.D. Miss. Oct. 10, 2013) (citing multiple authorities).

14

Plaintiff must designate Dr. Bernardo as an expert witness and comply with Rule 26's disclosure requirements on or before January 31, 2014. Defendant may depose Dr. Bernardo at any point prior to the pretrial conference. If Plaintiff has not produced all relevant medical records to Defendant, he must do so at least one week prior to the deposition.

    SO ORDERED AND ADJUDGED this 22nd day of January, 2014.

                                     *s/Keith Starrett*
                                     UNITED STATES DISTRICT JUDGE